UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUZANNE MARIE CARPENTER,

    Plaintiff,

v.                                                  Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,        Case No. 1:19-cv-00130

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act for the period between September 22, 2013, through August 10, 2016.  For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

On August 14, 2015, Plaintiff applied for DIB alleging a disability onset date of September 22, 2013. (PageID.35.) Her claim was initially denied on December 29, 2015. (*Id.*) The claimant

2

has insured status through December 31, 2019. (*Id*.) A timely request for a hearing was filed on January 19, 2016, and Administrative Law Judge Thomas L. Walters held a hearing on August 3, 2017. (*Id*.) On October 26, 2017, he issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act before August 10, 2016, but disabled as of that date (her 50th birthday) through the date of his decision. (PageID.35-42.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (PageID.21.)

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff had the following severe impairments, none of which met or medically equaled one of the listed impairments: (1) "degenerative disc disease of the spine status-post decompression/fusion," (2) "status-post cardiac stenting and pacemaker placement," and (3) thyroid disorder. (PageID.37-38.) He also determined that she had not engaged in substantial gainful activity since the alleged onset date: September 22, 2013. (PageID.37.)

With respect to Plaintiff's residual functional capacity, the ALJ determined that from September 22, 2013, Plaintiff had the residual functional capacity to perform sedentary work with additional limitations. (PageID.38-41.) Specifically, he found she "can occasionally bend, turn, crouch, stoop, climb, crawl, and kneel; cannot walk beyond a city block; and can perform simple, routine, and repetitive tasks due to chronic pain." (PageID.38.) He noted that she had at least a high school education and spoke English. (PageID.40.)

In summarizing the medical evidence, the ALJ noted that Plaintiff injured her back at work in September 2013. (PageID.38.) "Physical examination revealed a guarded leg lift, leg extension, and knee movement. There was tenderness and spasm in her thoracolumbar, lumbar, lumbosacral

4

area." (*Id.*)  Her complaints of pain continued, and treatment notes indicated "back pain with numbness and weakness in her lower extremities." (PageID.38-39.)  Imaging in that time period "revealed anterolisthesis of L4 relative to L5." (PageID.39.)  The ALJ noted that in March 2014 practitioners had stated she could walk a quarter mile and sit for up to 30 minutes.  Imaging of Plaintiff's spine in April 2015 revealed, among other things "left facet hypertrophy and mild resulting anterolisthesis," "mild central canal stenosis," "moderate left neural foraminal narrowing," and "extensive facet hypertrophy" with "some bulging," as well as some scoliosis. (PageID.39.)

Plaintiff received a facet block in May 2015 but denied that it gave her any pain relief on follow-up. (PageID.39.)  A lumbar CT scan in October 2015 showed "lumbar spondylosis, most significant at L5-S1, with grade 1 degenerative listhesis at S1, bilateral neural foraminal stenosis and mild central stenosis at L4-5 and L5-S1." (*Id.*)  In January 2016, "imaging noted active disc degeneration at T11-12 and lower lumbar facet arthrosis with active bone remodeling." (*Id.*) Plaintiff underwent a lumbar decompression and fusion in January 2016. (*Id.*)  At the hearing, Plaintiff testified that she had continued back pain, could not lift over 10 pounds, and "reported bad days at least twice per week where she does not do anything." (*Id.*)  The ALJ also noted that, at the hearing, Plaintiff's husband testified that her activity declined after the onset date. (*Id.*)

The ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but stated that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." (PageID.39.)  He went on to state that her "alleged restrictions are supported by consistent treatment notes, radiology imaging, surgical treatment notes, and impaired physical

5

examinations." (*Id.*) He also found that she had greater limitations than what a medical consultant had indicated in his residual functional capacity assessment. (*Id.*)

The ALJ found that Plaintiff was unable to perform her past relevant work as a cake decorator (PageID.40) at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs that a particular claimant can perform, her limitations notwithstanding. Here, the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 80,000 jobs nationally that an individual with Plaintiff's RFC could perform despite her limitations. (PageID.41.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits while age 49 or younger.

As of August 10, 2016, when Plaintiff turned 50, her age category changed, and the ALJ determined that "a finding of 'disabled' is reached by direct application of Medical Vocational Rule 201.14." (PageID.41.) That rule essentially states that, if a claimant is between the ages of

6

50 and 54, has a high school education, cannot perform skilled work, and has no transferable skills based on her past work, then the claimant must be found disabled.

### 1. Discussion of Treating Physician

Here, Plaintiff is correct that the ALJ rejected a treating physician's opinion without sufficient explanation.

Before the onset of the claimed disability on September 22, 2013, Dr. van der Harst had noted that Plaintiff needed accommodation from her job at Meijer, including that she needed an elevated work surface and to decrease bending "for any continued trial of work with her significant pain." (PageID.577, 582.)  Dr. van der Harst noted that Plaintiff had difficulty standing one hour, sitting a half hour, and hand numbness, and that a month of physical therapy had enabled Plaintiff to work briefly, but that she had been off work for ten additional days. (PageID.580.)  On July 10, 2013, Dr. van der Harst stated that Plaintiff was working with her employer to find an accommodation for her work space and noted that Plaintiff reported that when she walks her back "gives out" and she "experiences stumbling." (PageID.591.)  In August of 2013, Dr. van der Harst noted that Plaintiff was continuing to work full time despite her symptoms and without an adaptive elevated work surface from her employer. (PageID.594.)

On September 23, 2013, Dr. van der Harst reported that Plaintiff had had an unusually busy day at work that involved bending unnaturally to a low height table that had not been corrected by her ergonomic request, and her movements had involved a lot of twisting. (PageID.597.)  That "twisting and burning produced aching pain in her back with progressive spasms and difficulty standing," resulting in severe pain. (*Id.*)  Dr. van der Harst noted that Plaintiff needed to be off work for two weeks for physical therapy and medication, including Vicodin and Flexiril, which caused her to feel sedated.  As a result, she was not allowed to drive. (*Id.*)  Dr. van der Harst noted

that Plaintiff "is restricted in bend, twist, lift and carry ten pounds, and prolonged standing due to spasms and pain." (*Id.*) She also stated that Plaintiff could not return to her job as a cake decorator without ergonomic accommodation to avoid bending, twisting, and lifting. (*Id.*)

On October 9, 2013, Dr. van der Harst once again stated that Plaintiff could not be required to bend or twist and was limited to "15 pounds material handling," although she encouraged that Plaintiff walk up to two hours per day. (PageID.607.) On October 28, 2013, Dr. van der Harst noted that Plaintiff reported that she had severe back pain when she stands or walks, but could sit for up to an hour, depending on the chair, but obtained relief by lying down. (PageID.612.) Dr. van der Harst recommended that Plaintiff should be treated with physical therapy and that after a month she would "consider bracing, and any work accommodations needed for her tall stature at employment. If workstation is unable to be changed, alternative work assignments on a temporary basis could be considered." (PageID.612.)

On December 2, 2013, Dr. van der Harst once again restricted Plaintiff from work "due to impairments in sit, stand, walk and all material handling." (PageID.618.) On December 12, 2013, she suggested a surgical evaluation and noted that Plaintiff had fewer episodes of severe back pain "since stopping physical therapy, maintaining restrictions for 10 pounds handling and no bend/twist." (PageID.636, 639.) She also stated that Plaintiff was "[r]estricted off work due to impairments in sit, stand, walk and all material handling," required "no bend [and] twist," and advised "caution in driving motor vehicle on Vicodin and with current pain levels." (PageID.639, 642.)

Dr. van der Harst continued to note impairments such as "lumbar mobility, comfort, strength requiring 10 pounds material handling restriction, no bend, twist, or standing greater than 20 minutes" consistently throughout the period during which Dr. van der Harst examined Plaintiff.

8

(*See, e.g.,* PageID.657 [January 15, 2014], 663 [February 26, 2014], 678 [March 18, 2014], 681 [April 8, 2014].) Other notes discuss an acute back spasm and pain resulting in even more restriction. (*See* PageID.660 [January 29, 2014].) On April 8, 2014, Dr. van der Harst noted that Plaintiff could not return to work as a cake decorator due to "permanent restrictions in lumbar bending/twisting," but "[p]otential for return to sedentary work is good." (PageID.681.) In May of 2014, Dr. van der Harst discusses improved symptoms but continued restriction in bending and twisting or handling greater than 10 pounds and noted that Plaintiff needed to alternate sitting (10 minutes), standing (20 minutes), and walking (10 minutes). (PageID.685, 687.) Dr. van der Harst set out similar restrictions in October 2014. (PageID.703.)[2]

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See*

---

[2] Notably, a lumbar fusion was performed in January 2016, and Dr. John Keller's notes on April 14, 2016, state that Plaintiff's back and lower extremity pain was improving, and she was "going to slowly wean from her chair-back brace." (PageID.749.)

9

*Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Although the ALJ reviewed Plaintiff's medical records and impairments, he never discussed Dr. van der Harst's opinions, conclusions, or restrictions. (PageID.38-39.) The ALJ found that Plaintiff's RFC included the ability to "occasionally bend, turn, crouch, stoop, climb,

crawl, and kneel." (PageID.38.) This determination appears to be contrary to Dr. van der Harst's consistent restrictions on bending and twisting, as well as her other discussions of Plaintiff's impairments, including that she sometimes would be required to lie down to relieve pain, could not drive, or would be absent due to pain or treatment.

The Commissioner argues that the ALJ's assessment was nonetheless supported by substantial evidence and that there were sufficient jobs present in the national economy even considering Dr. van der Harst's limitations. (PageID.891.) However, Dr. van der Harst limited Plaintiff more severely at times than simply to no bending and twisting. Because the ALJ does not discuss the weight assigned to Dr. van der Harst's opinion of Plaintiff's impairments *at all*, the Court is unable to determine whether he adequately considered her opinions in determining Plaintiff's RFC, and whether his RFC determination would change as a result of his consideration of the treating physician's opinions. As a result, the Court will remand for additional analysis.

### 2. Determination regarding Plaintiff's Statements

Plaintiff also correctly argues that the ALJ did not explain his basis for not crediting Plaintiff's statements regarding her symptoms. (PageID.873.) Although the ALJ here stated that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not fully supported for the reasons explained in this decision" (PageID.39), he does not explain his reasons for that finding at any other point in the opinion.

For decisions made on or after March 28, 2016, the ALJ evaluates a plaintiff's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. SSR 16-3p explains that an ALJ's decision must "contain specific

11

reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10.

While this Court does not revisit credibility findings (or, pursuant to SSR 16-3p, the consistency of a plaintiff's statements) "absent compelling reason," the ALJ did not set out a sufficient basis for this Court to review that determination. *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511-12 (6th Cir. 2013). Therefore, the Court will remand for further analysis on that issue, as well.

## CONCLUSION

Because remand is required on these issues, the Court will not address the other arguments Plaintiff raises. For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Dated: May 14, 2020                                                      /s/ Sally J. Berens
                                                                          SALLY J. BERENS
                                                                          U.S. Magistrate Judge